UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| RAMMIE MANLEY, | ) | CASE NO. 18-cv-1431 |
|---|---|---|
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| LESTER HUGHES, et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

This matter is before the Court upon defendants' objection (Doc. No. 34 ["Obj."][1]) to Magistrate Judge Kathleen B. Burke's Report and Recommendation, (Doc. No. 32 ["R&R"]) recommending that defendants' motion for summary judgment (Doc. No. 31 ["Mot."]) be granted in part and denied in part. Upon *de novo* review and for the reasons set forth below, the Court **ADOPTS** the R&R in full, with some clarification.

**I.    BACKGROUND**

The facts surrounding this action have been set forth in the R&R.[2] Familiarity therewith is assumed. (*See* R&R at 747–49[3].) Briefly, plaintiff, Rammie Manley ("Manley") alleges that defendants violated his constitutional right to be free from cruel and unusual punishment under the Eighth Amendment. (Doc. No. 1 ["Compl."] at 6–8.) Manley, who is an inmate at the Ohio State Penitentiary ("OSP"), alleges that, while he

---
[1] Defendants filed their objections twice—Doc. No. 33 and Doc. No. 34. Because the latter filing appears to be a corrected copy of the former, the Court strikes Doc. No. 33.
[2] Defendants do not object to the facts as outlined in the R&R.
[3] All page numbers refer to the page identification number generated by the Court's electronic docketing system.

was being escorted within the prison, an unknown OSP correctional officer (or officers) grabbed and dislocated[4] his left index finger while he was handcuffed behind his back. (Compl. at 7.) Manley brought suit against numerous OSP employees who were involved in, or present during, the incident but Manley admits that he does not know which defendant(s) actually caused his injury.[5] The record shows that only three officers—Williams, Shannon, and Filipowicz (sometimes referred to as the "Escort Officers"[6])—had physical contact with Manley during the escort. (Doc. No. 31-9 at ¶ 26; Doc. No. 31-11 at ¶¶ 17–18; Doc. No. 31-17 at ¶¶ 14–15.)

The undisputed facts are as follows: On December 21, 2017, Manley refused to allow OSP officers to handcuff him ("cuff-up") to search his cell for razors. (Doc. No. 31-2 ["Manley Depo."] at 604–05; Doc. No. 31-6 ["Hughes Decl."] at ¶¶ 11–14.) Manley refused numerous requests to cuff-up. (Manley Depo. at 605; Hughes Decl. at ¶¶ 14–15.) OSP officers attempted to gain compliance by deploying OC spray into Manley's cell. (Manley Depo. at 605; Hughes Decl. at ¶ 16.) Manley still refused to cuff-up, so the OSP cell extraction team forcibly removed Manley from his cell. (Manley Depo. at 616; Hughes Decl. at ¶¶ 28–31.) Once Manley was extracted and handcuffed behind his back, the OSP extraction team escorted Manley to a decontamination cell located in the prison basement. (Manley Depo. at 621–22; Hughes Decl. at ¶ 33.) Manley's finger was

---

[4] Manley used the terms dislocated and broken interchangeably throughout his complaint and deposition. Initially, medical staff thought Manley's finger was broken because the bone was protruding through the skin. (*See* Doc. No. 31-5 at 684.) Upon further examination, it was determined that the finger was actually dislocated. (*Id.* at 671.) The precise nature of Manley's injury is immaterial to the Court's analysis.

[5] Manley was unable to identify which officers escorted him because OSP prisoners are not permitted to turn their heads while being escorted for fear that they will spit on officers. Officers ensure compliance by pushing prisoners' heads toward the ground during escorts. (Manley Depo at 620.)

[6] Officers Williams, Shannon, and Filipowicz are the only defendants who object to the magistrate judge's R&R.

dislocated upon arriving at the decontamination cell. (Manley Depo. at 622; Hughes Decl. at ¶¶ 35–37.)

The parties disagree, however, about how and when the injury occurred. Manley claims that during the escort, an OSP officer "kept trying to grab [his] finger" and shortly before arriving to the decontamination cell, the "officer[] finally got ahold of [Manley's] finger and dislocated it." (Manley Depo. at 623.) For their part, defendants assert that no OSP officer purposely dislocate Manley's finger and assume the injury must have been caused during the struggle in Manley's cell. (Mot. at 505–06.)

The magistrate judge recommended granting summary judgment in favor of all defendants for any alleged "constitutional violation for the officers' conduct leading up to and including extracting [Manley] from his cell … because the force they used was necessary to maintain or restore discipline." (R&R at 746.) The magistrate judge also recommended granting summary judgment in favor of all officers, except Williams, Shannon, and Filipowicz, as to Manley's allegation that an officer intentionally dislocated his finger during escort. (R&R at 764.) As to this allegation, the magistrate judge determined that there was a question of material fact regarding whether one or more of the Escorting Officers intentionally dislocated Manley's finger while escorting him. The Escort Officers—Williams, Shannon, and Filipowicz—object to this portion of the magistrate judge's recommendation

## II. DISCUSSION

This Court's review of the magistrate judge's R&R is governed by Rule 72(b), which requires a *de novo* decision as to the portions of the R&R to which objections are

made. Fed. R. Civ. P. 72(b)(3). Williams, Shannon, and Filipowicz assert that the magistrate judge erred in denying them summary judgment because: (1) there is no record evidence indicating that the officers "intentionally, maliciously, and/or sadistically broke [Manley's] finger[,]" (Obj. at 787) and (2) the Escort Officers are entitled to qualified immunity. (*Id.* at 775.) The Court has reviewed *de novo* those portions of the R&R to which objections have been made.

### a. Sufficiency of the Record Evidence

There is sufficient record evidence for a reasonable jury to find in favor of Manley. Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of establishing there is no genuine issue of material fact and is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). But all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. ED. 2d 538 (1986). Once the moving party meets this burden, to survive summary judgment, the party opposing the motion must produce admissible evidence—not mere allegations—demonstrating that there is a genuine triable issue. *Id.* at 586 n.11. Summary judgment is appropriate when the "nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp.*, 477 U.S. at 323.

The Eighth Amendment protects prison inmates from excessive force by prison officials. *See Perkins v. Alexander*, No. 5:08-CV-2034, 2009 WL 3489908, at *4 (N.D. Ohio Oct. 22, 2009). But Eighth Amendment protection does not apply to *de minimis* uses of physical force; it is reserved for the sort of force that is "repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 9–10, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 318–19, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986)) (internal quotation marks omitted). When prison officials are accused of using excessive force, the court must determine whether the force used was applied in good-faith to restore order or whether the force was applied "maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Williams, Shannon, and Filipowicz assert that "there is absolutely no evidence that any officers acted maliciously and sadistically when Manley alleges his finger was broken." (Obj. at 790.) The Court disagrees; there is sufficient record evidence for a reasonable jury to find that one or more of the Escort Officers acted maliciously and sadistically.

As an initial matter, the Williams, Shannon, and Filipowicz stress that Manley did not file an opposition brief. (Obj. at 780, 784, 785.) That does not absolve defendants of meeting their initial burden to show the *absence* of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). Defendants argue that because their summary judgment motion exhibited declarations in which the officers (including the Escort Officers) deny injuring Manley during the escort, "[p]laintiff was [then] obligated to proffer evidence to rebut this evidence." (Obj. at 784.)

This argument misses the point. The burden never shifted to Manley because defendants failed to meet *their* initial burden of showing the absence of a materially factual dispute.

Williams, Shannon, and Filipowicz further assert, "[t]he [m]agistrate [j]udge erred because she assumed that [d]efendants acted maliciously and sadistically when no evidence was proffered by [p]laintiff [to] support this allegation." (Obj. at 780.) While the Court agrees that the magistrate judge may have overstated the strength of the evidence, the fact remains that Williams, Shannon, and Filipowicz did not "meet their burden to show that there is an absence of a genuine issue of material fact as to whether Manley's finger was dislocated maliciously and sadistically" during the escort. (R&R at 760.) In so recommending, the magistrate judge considered only the evidence proffered by defendants in support of their motion, which included *inter alia* Manley's deposition testimony and a video recording of the incident. (R&R at 752–53; 758–60.) Both the deposition testimony and the video recording are record evidence that the Court must consider in deciding a motion for summary judgment. *See Meyer v. AmeriSourceBergen Drug Corp.*, No. 3:04 CV 7301, 2006 WL 2164713, at *2 (N.D. Ohio July 31, 2006) (when ruling on an unopposed motion for summary judgement, the district court is obligated to consider the motion in light of the entire record). In short, the record evidence reveals a genuine issue of material fact as to what transpired with respect to Manley's finger during the escort.

During his deposition,[7] Manley testified that an officer repeatedly attempted to grab his finger while his hands were handcuffed behind his back. (Manley Depo. at 623.)

---

[7] Manley's deposition is appended to defendant's motion as Exhibit 2.

According to Manley, the attempts were unsuccessful because Manley "brought [his] fist[s] up." (*Id.*) As the three officers escorted Manley into the decontamination area, however, Manley claims that an officer "finally got ahold of [Manley's] finger and dislocated it." (*Id.*)

Even though Manley (proceeding *pro se*), failed to use the magic words "malicious and sadistic," there is little question what Manley is inferring—an officer repeatedly attempted to, and ultimately succeeded in, intentionally injuring his finger while he was handcuffed and shackled. *See Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) ("[T]he court must afford all reasonable inferences, and construe the evidence[,] in the light most favorable to the nonmoving party.") (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). If true, such actions certainly qualify as sadistic. Defendants have put forth *contradictory* facts but have failed to show that there is no genuine dispute of material facts.

Further, the Court need not look exclusively at Manley's sworn statements to find a genuine issue of material fact. Defendants also rely on several video recordings that were submitted with their motion for summary judgment.[8] The parties disagree as to what the video shows—defendants argue that the video "corroborates the officer's account of the escort … [that] [t]he escort proceed[ed] without incident" (Mot. at 507) but Manley alleges that it supports his claim. (Compl. at 7.) This demonstrates that there is a genuine issue of material fact as to what the video shows.

---

[8] The videos are Exhibit 16 to defendants' motion. Defendants submitted two disks containing three video segments. The first two segments are contained on disk number one and show the events leading up to Manley's extraction. The third video depicts Manley being extracted and escorted to the decontamination cell. The Court only cites to the third video and refers to the video as "Video 3".

In relevant part, the video shows the extraction team entering Manley's cell. (Video 3 at 2:41.) A short time later, Manley is removed from his cell; he is handcuffed with his hands behind his back and wearing leg shackles. (Video 3 at 4:38.) For a brief moment, Manley's hands are visible, and his fingers appear to be balled into fists. (Video 3 at 4:40–4:41.) No blood is apparent, and none of Manley's fingers appear to be deformed. (*Id.*) As Manley and the Escort Officers wait for the arrival of an elevator, en route to the decontamination area, the camera shows Manley again. His hands appear to be in fists and no deformity or blood is readily visible. (Video 3 at 5:32–5:35.) Manley is relatively quiet throughout most of escort and particularly during the elevator ride.[9] (Video 3 at 5:50–7:06.) Shortly after Manley is escorted into the decontamination area, he emits a loud scream. (Video 3 at 7:08.) Manley yells, "You broke my finger!" (Video 3 at 7:09) and continues "Oh my God, you just broke my finger!" (Video 3 at 7:17.)

Once Manley is secured in the decontamination cell, the extraction team members are seen walking around in the hallway. Officer Shannon—who admits to having contacted Manley's left arm during the escort (Doc. No. 31-17 at 744)—appears to be suffering from the effects of the OC spray and is seen motioning toward his face as he tells another officer "this shit's fucking burning to all hell." (Video 3 at 12:06–12:07.) The other officer seems to signal for Officer Shannon to "hush."[10] (Video 3 at 12:01–12:02, 12:07.) At one point, Lieutenant Hughes walks toward Officer Shannon, points in

---

[9] Manley claims that an officer slammed his head into the elevator wall. (Doc. No 1-1 at 21.) In the video, a "thump" is heard (Video 3 at 5:48) and Manley's face is pushed against the elevator wall while an officer is heard saying "easy, easy, easy." Manley then says, "oh yeah, bang my head on the wall." (Video 3 at 5:50). Following this incident, Manley is quiet through the remainder of the elevator ride.

[10] Of course, this is a matter for a fact-finder to determine.

Shannon's direction, and says "we're going over to medical next, man." (Video 3 at 9:52.) Another officer can be heard telling Manley "don't look at it" (Video 3 at 10:56) and "we're going to get you looked at, man." (Video 3 at 11:05–11:06.) From this evidence, taken in conjunction with all record evidence, a reasonable jury could find that an Escort Officer maliciously injured Manley's finger while he was handcuffed behind his back.

The Escort Officers concede that "an unknown officer *could* have accidently, or even negligently, grabbed his finger during the escort, which resulted in a broken finger." (Obj. at 786) (emphasis added).[11] That could be, but it is not the only possible explanation. Weighing the evidence and making credibility determinations is properly within the purview of a jury. *See Anderson*, 477 U.S. at 265 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge" when ruling on motion for summary judgment.).

The Escort Officers also argue that they are entitled to summary judgment because "Manley was unable to identify the officer who broke his finger." (Obj. at 788.) However, the Sixth Circuit recently rejected this very argument in *Fazica v. Jordan*, 926 F.3d 283 (6th Cir. 2019). In *Fazica*, an inmate alleged that members of the jail's "cell extraction team" violated her constitutional rights by using excessive force. *Id.* at 284. The inmate was unable to identify which officer(s) were directly responsible for the alleged improper conduct because her vision was obscured by a spit hood and "the officers bent her over so that her face was toward the floor." *Id.* 285–86. The plaintiff,

9

therefore, sued four members of the cell extraction team and an on-duty Sergeant. *Id.* at 288. The defendants moved for summary judgment claiming that "[p]laintiff had failed to make specific allegations against particular [d]efendants." *Id.* The Sixth Circuit affirmed the district court's denial of summary judgement, holding "where a plaintiff[,] who [is] unable to identify clearly which officers committed specific acts during the incident[,] produces evidence that places an individual defendant in a small group of officers that committed allegedly unconstitutional acts within each other's presence, the plaintiff's claim against that defendant may survive summary judgment." *Id.* at 292.

Here, record evidence shows that Williams, Shannon, and Filipowicz were the only three officers to have physical contact with Manley during the escort. (Doc. No. 31-9 at 718.) Manley is unable to identify which officers committed specific acts because he was not permitted to turn his head during the escort and officers pushed his head toward the floor. (Manley Depo. at 620; Video 3 at 6:42–6:49.) And evidence—in the form of deposition testimony and video evidence—places Williams, Shannon, and Filipowicz in a small group of officers, one or more of whom may have committed an unconstitutional act. As such, a jury could reasonably find one or more of the three Escort Officers were personally involved in the excessive force or failed to intervene to prevent it. *See id.* at 294; *see also Burley v. Gagacki*, 729 F.3d 610, 620 (6th Cir. 2013) (police officers can be held liable under a failure-to-intervene theory).

---

[11] The Court notes that this argument was made for the first time in the objection to the R&R. In their summary judgment motion, defendants "assumed [that Manley's] finger was hurt in the struggle in the cell…." (Mot. at 505–06.)

### b. Qualified Immunity

Williams, Shannon, and Filipowicz are not entitled to qualified immunity at this time. The qualified immunity doctrine shields governmental officials performing discretionary functions from civil liability if their action did not violate clearly established constitutional or statutory violations about which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (quotation marks and citation omitted). The doctrine will apply if "officers of reasonable competence could disagree on the issue." *Mullins v. Cyranek*, 805 F.3d 760, 765 (6th Cir. 2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)).

To determine whether an officer is entitled to qualified immunity, courts employ a two-part test: (1) whether the facts, taken in a light most favorable to the party alleging the injury, show an officer's conduct violated a constitutional right; and (2) whether the constitutional right violated was clearly established such that a reasonable person would have known that the action he is taking violated that right. *Id.*

Williams, Shannon, and Filipowicz do not address prong one, they simply argue that any constitutional violation was not clearly established. If Manley's version of the facts is to be believed, he certainly had a constitutional right to not have his finger intentionally injured while his hands were handcuffed behind his back. The sole question, therefore, is whether that right was clearly established on December 21, 2017.

To determine whether a right was clearly established at the time of the alleged offense, the court looks to Supreme Court precedent, "then to decisions of [the Sixth

Circuit] and other courts within [the] circuit….." *Mack v. Holcomb*, 446 F. Supp. 2d 777, 787 (N.D. Ohio 2006). However, preexisting case law need not have held as unlawful the precise action at issue; the unlawfulness of the alleged action must simply have been apparent to a reasonable officer in light of preexisting law. *Sample v. Bailey*, 409 F.3d 689, 698 (6th Cir. 2005) (citing *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 202, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001) (internal quotation marks omitted)).

"[T]here is a clear consensus among the circuits that the Eighth Amendment protects against the malicious and sadistic infliction of pain and suffering … in a diverse range of factual scenarios." *Scott v. Becher*, 736 F. App'x 130, 133–34 (6th Cir. 2018) (quoting *Thompson v. Commonwealth of Va.*, 878 F.3d 89, 103 (4th Cir. 2017) (internal quotation marks omitted)). Inflicting unnecessary pain on a handcuffed and controlled inmate seems particularly self-evident. *See Johnson v. Perry*, 106 F. App'x 467, 469 (6th Cir. 2004) ("An unprovoked application of force to a handcuffed and shackled prisoner would violate clearly established law under the Eighth Amendment.") But, in case there was any doubt, the Sixth Circuit has held that any reasonable officer would know that slamming a "handcuffed and controlled prisoner" into a concrete wall was prohibited by the Eighth Amendment. *Cordell v. McKinney*, 759 F.3d 573, 588 (6th Cir. 2014). Similarly, any reasonable officer would know that intentionally grabbing an inmate's

finger—such that it causes a significant injury—while his hands were handcuffed behind his back, is a violation of the inmate's constitutional rights. Williams, Shannon, and Filipowicz are not entitled to qualified immunity.

### III. CONCLUSION

The Court has reviewed the R&R and adopts the same, except to the extent it implies or suggests that one or more of the Escort Officers did, in fact, violate Manley's constitutional rights during the escort, as that is an issue for a factfinder to decide. Accordingly, defendants' motion for summary judgment is:

(1) **GRANTED** as to Manley's allegations against all defendants for acts committed leading up to and during his extraction from his cell; and

(2) **GRANTED** as to all defendants, except Williams, Shannon, and Filipowicz, as to Manley's allegation that an officer intentionally injured his finger while he was being escorted to R&D. The case will proceed solely against defendants Williams, Shannon, and Filipowicz as to this allegation.

Finally, under 28 U.S.C. 1915(e)(1), the Court may appoint an attorney to represent any person unable to afford counsel. The issues presented for trial in this case are sufficiently complex that *pro se* plaintiff Manley would benefit from counsel. As such, the Court would consider a request from Manley for an attorney to represent him in this matter.

**IT IS SO ORDERED**.

Dated: November 25, 2019

                                            **HONORABLE SARA LIOI**
                                            **UNITED STATES DISTRICT JUDGE**